UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| CALIFORNIA SPINE AND NEUROSURGERY INSTITUTE,<br><br>Plaintiff,<br><br>v.<br><br>UNITED HEALTHCARE INSURANCE COMPANY, et al.,<br><br>Defendants. | Case No. 19-CV-02417-LHK<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS WITH LEAVE TO AMEND**<br><br>Re: Dkt. Nos. 7, 13 |

Plaintiff California Spine and Neurosurgery Institute ("Plaintiff") sues Defendant United Healthcare Insurance Company ("Defendant") and Does 1 through 25 for causes of action arising from Defendant's alleged under-payment of claims for reimbursement submitted by Plaintiff after Plaintiff provided medically necessary spinal procedures and treatment to patients who were insured by Defendant. ECF No. 1-1 Ex. C ¶¶ 8-67 (First Amended Complaint or "FAC"). Before the Court is Defendant's motion to dismiss. ECF No. 7. Having considered the parties' submissions, the relevant law, and the record in this case, the Court GRANTS in part and DENIES in part Defendant's motion to dismiss with leave to amend.

**I.   BACKGROUND**

### A. Factual Background

Plaintiff is a "medical facility dedicated to the care and treatment of spine injuries and/or conditions" located in Campbell, California. FAC ¶¶ 1, 8. In March 2018 and July 2018, Plaintiff rendered "medically necessary" "spine surgeries" to three patients—D.B., L.M., and M.B.— whose health insurance benefits were sponsored and administered by Defendant.[1]  *Id*. ¶¶ 12, 20, 25, 30, 36, 41. All three patients worked for the same employer and were "beneficiar[ies] of a health plan . . . administered" by Defendant. *Id.* ¶¶ 11, 24, 35. All patients owned an identification card from Defendant that was presented to medical providers in order to obtain medical care. *Id*. Defendant instructed patients to present an identification card "to assure medical providers that they would be paid for medical care . . . at a percentage of the usual and customary value for such care." *Id.* Furthermore, patients' employer published a summary of the benefits of patients' medical plans and noted that the plans paid 70% of eligible expenses for care from out-of-network providers.[2] *Id*. ¶¶ 12, 25, 36. Plaintiff was an out-of-network provider under the health plans administered by Defendant. *Id*. ¶ 9.

D.B., L.M., and M.B. experienced back pain and sought medical services from Plaintiff. *Id.* ¶¶ 13, 26, 37. For each patient, Plaintiff contacted Defendant to verify medical eligibility benefits, and Defendant's client services representatives "either expressly or impliedly assured" Plaintiff that Defendant "carried the financial responsibility to pay for" all three patients' "anticipated medical care at 70% of the usual and customary value for such care." *Id.* ¶¶ 17, 27, 38. For D.B., Plaintiff received an authorization letter in response to Plaintiff's request for coverage of services that determined that the treatment was medically necessary. *Id.* ¶ 14-16. For patients L.M. and M.B., Defendant's client services representatives allegedly told Plaintiff that "no pre-authorization was required." *Id.* ¶¶ 29, 40.

---

[1] Plaintiff "limited the disclosure of patient identification information pursuant to the privacy provisions of the federal Health Insurance Portability & Accountability Act ("HIPAA") §§ 1320(d) *et seq*., and the California Constitution, art. 1, § 1." FAC at 4 n.1.
[2] The FAC alleges that D.B. and L.M. both have the same health plan but that M.B. has a different one. FAC ¶¶ 12, 25, 36. According to the FAC, the health plans reimburse 70% of expenses for care from out-of-network providers with slight differences based on deductibles. *Id*. For the purposes of Defendant's motion to dismiss, these differences are immaterial.

Based on the existence of an identification card issued by Defendant, the pre-authorization discussions and the authorization letter, and "the express and/or implied resultant assurances" that Plaintiff "would be paid at least 70% of the usual and customary value of its medical services anticipated to be rendered," Plaintiff provided treatment to D.B., L.M., and M.B. and submitted claims for payment at the usual and customary rate for such services. *Id*. ¶¶ 20-21, 30-31, 41-42. Plaintiff alleges, however, that Defendant significantly underpaid Plaintiff and owes $206,909.66 plus interest and other costs. *Id*. ¶¶ 21-23, 31-34, 42-45, 67.

### B. Procedural History

On December 20, 2018, Plaintiff filed suit against UHC of California doing business as UnitedHealthcare of California, Apple Inc., and Does 1 through 25 in the Superior Court of Santa Clara County. ECF No. 1-1 Ex. A. Plaintiff's complaint asserted three causes of action against defendants: breach of implied in fact contract, breach of express contract, and quantum meruit. *Id.* On February 25, 2019, Plaintiff amended the complaint and replaced UHC of California with United Healthcare Insurance Company. FAC ¶ 5. On April 23, 2019, Plaintiff filed a request for dismissal of Apple Inc. in state court. ECF No. 1-1 Ex. E. On April 30, 2019, Plaintiff also filed a request for dismissal of UHC of California in state court. ECF No. 1-1 Ex. F. United Healthcare Insurance Company was the only remaining named defendant.

On May 3, 2019, Defendant removed the case to this Court. ECF No. 1. On May 10, 2019, Defendant moved to dismiss all three causes of action. *See* ECF No. 7 ("Mot."). Plaintiff opposed the motion to dismiss on July 17, 2019, *see* ECF No. 19 ("Opp."), and on July 31, 2019, Defendant filed a Reply, *see* ECF No. 20 ("Reply").

## II.   LEGAL STANDARD

### A. Motion to Dismiss Under Rule 12(b)(6)

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." A complaint that fails to meet this standard may be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). The United States Supreme Court has held that Rule 8(a) requires a plaintiff to plead

3
Case No. 19-CV-02417-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS WITH LEAVE TO AMEND

"enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal quotation marks omitted). Put another way, "a complaint need not contain 'detailed factual allegations,' [but] a plaintiff must plead at least enough facts to put the defendant on notice of the claim against it." *Wheeler v. MicroBilt Corp.*, 700 Fed. App'x 725, 727 (9th Cir. 2017) (quoting *Iqbal*, 556 U.S. at 678). For purposes of ruling on a Rule 12(b)(6) motion, the Court must "accept factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

The Court, however, need not "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam) (internal quotation marks omitted). Mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004).

**B. Leave to Amend**

If the Court determines that a complaint should be dismissed, it must then decide whether to grant leave to amend. Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "shall be freely given when justice so requires," bearing in mind "the underlying purpose of Rule 15 to facilitate decisions on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (alterations and internal quotation marks omitted). When dismissing a complaint for failure to state a claim, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Id.* at 1130 (internal quotation marks omitted). Accordingly, leave to amend generally shall be denied only if allowing

amendment would unduly prejudice the opposing party, cause undue delay, or be futile, or if the moving party has acted in bad faith. *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008).

### III.   DISCUSSION

Defendant moves to dismiss Plaintiff's three claims for breach of implied contract, breach of express contract, and quantum meruit. The Court first addresses the breach of contract claims before turning to the quantum meruit claim.

#### A.   Breach of Implied Contract and Breach of Express Contract

Plaintiff alleges that either an implied contract or an express contract was formed between Plaintiff and Defendant through (1) the existence of an identification card issued by Defendant; (2) the use and presentation of an identification card by D.B., L.M., and M.B.; (3) the pre-authorization discussions and communications; and (4) "the express and/or implied resultant assurances" that Plaintiff "would be paid at least 70% of the usual and customary value of its medical services anticipated to be rendered. *See* FAC ¶¶ 20-21, 30-31, 41-42. Plaintiff also contends that an implied contract or an express contract was also formed based on the totality of the circumstances and the "custom and practice in the health care industry." *See id*. ¶¶47, 55; Opp. at 7-14. The Court finds that because the FAC alleges that Defendant gave "express and/or implied resultant assurances" that Plaintiff "would be paid at least 70% of the usual and customary value of its medical services anticipated to be rendered," the FAC has alleged sufficient facts to plausibly suggest the formation of either an implied or express contract.

Under California law, a cause of action for breach of contract requires "(1) existence of the contract; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) the resulting damages to the plaintiff." *Chung v. Nationstar Mortg.*, 2013 WL 123219999, at *4 (C.D. Cal. Oct. 29, 2013) (quoting *Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (Cal. 2011)). Contract formation, in turn, requires "(1) parties capable of contracting; (2) their consent; (3) a lawful object; and (4) a sufficient cause or consideration." *Summit Estate, Inc. v. Cigna Healthcare of Cal., Inc.*, 2017 WL 4517111, at *3 (N.D. Cal. Oct. 10, 2017) (citing Cal. Civ. Code

5
Case No. 19-CV-02417-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS WITH LEAVE TO AMEND

§ 1550). "In order to satisfy the consent requirement, there must be 'objective' and 'outward manifestations' that the parties intended to be bound by an agreement." *Id.* (quoting *Weddington Prods., Inc. v. Flick*, 60 Cal. App. 4th 793, 811 (1998)). "A cause of action for breach of implied contract has the same elements as does a cause of action for breach of contract, except that the promise is not expressed in words but is implied from the promisor's conduct." *Yari v. Producers Guild of Am., Inc.*, 161 Cal. App. 4th 172, 182 (2008) (citing *Chandler v. Roach*, 156 Cal. App. 2d 435, 440 (1957)).

Defendant contends that a contract was never formed because Defendant did not consent to anything with Plaintiff. Defendant principally relies on *Cedars Sinai Medical Center v. Mid-West Nat. Life Ins. Co.*, 118 F. Supp. 2d 1002 (C.D. Cal. 2000), and *Community Hospital of the Monterey Peninsula v. Aetna Life Insurance Company*, 119 F. Supp. 3d 1042 (N.D. Cal. 2015). *See* Mot. at 10-14. *Cedars Sinai* stands for the proposition that "verification of coverage" cannot be "viewed objectively as exhibiting an intent to contract." *Cedars Sinai*, 118 F. Supp. 2d at 1008. *Community Hospital* holds that an authorization of treatment does not necessarily constitute a promise to pay. 119 F. Supp. 3d at 1049.

Defendant's reliance on *Cedars Sinai* and *Community Hospital* is misplaced. In the instant case, the FAC does not allege that Defendant merely verified coverage to Plaintiff or that authorization of treatment alone created an enforceable contract. Instead, Plaintiff claims that after Plaintiff contacted Defendant to confirm medical eligibility benefits, Defendant gave "express and/or implied resultant assurances" that Plaintiff "would be paid at least 70% of the usual and customary value of its medical services anticipated to be rendered." FAC ¶¶ 17, 27, 38; *see also id*. ¶48 (Defendant "confirmed that they would pay at least 70% of the usual and customary value of California Spine's care less credit for these patients' deductible obligations").

In this way, the instant action closely mirrors *Summit Estate, Inc. v. Cigna Healthcare of California, Inc.*, 2017 WL 4517111 (N.D. Cal. Oct. 10, 2017). In *Summit*, the plaintiff's complaint alleged that the defendants "advised" plaintiff that "[d]efendants would pay for treatment at the usual, reasonable and customary rate." 2017 WL 4517111, at *3. The court

determined that this was sufficient to state a claim for both breach of implied contract and breach of oral contract. *Id.* at \*4. Other cases have reached similar conclusions. *See Regents of Univ. of Cal. v. Principal Fin. Grp.*, 412 F. Supp. 2d 1037, 1042 (N.D. Cal. 2006) (finding that a reasonable jury could conclude that insurer-defendants exhibited an intent to contract because "defendants in this case provided both verification of coverage *and explicit authorization* for the hospital stay" (emphasis added)); *see also Enloe Med. Ctr. v. Principal Life Ins. Co.*, 2011 WL 6396517, at \*6 (E.D. Cal. 2011) (finding that "in some instances, a contract may be created on an authorization call").

Defendant offers two responses to this conclusion, both unavailing. First, Defendant argues that Plaintiff's allegations that Defendant gave "express and/or implied" assurances to pay 70% of the billed charges are "too vague and ambiguous to establish support for Plaintiff's claim." FAC ¶¶ 17, 27, 38; Mot. at 11. In *Summit*, however, a very similar statement—that defendants "advised in all cases that . . . . [d]efendants would pay for treatment at the usual, reasonable and customary rate"—was enough to allege a breach of an implied contract or oral contract. 2017 WL 4517111, at \*3-4. It also bears repeating that "a complaint need not contain 'detailed factual allegations'"; rather, Rule 8 simply requires that "a plaintiff must plead at least enough facts to put the defendant on notice of the claim against it." *Wheeler*, 700 Fed. App'x at 727 (quoting *Iqbal*, 556 U.S. at 678). Here, Defendant is on clear notice of the Plaintiff's breach of contract claims and the alleged conduct that gave rise to these claims. Thus, the FAC alleges enough facts to suggest that Defendant exhibited outward conduct indicating Defendants' intent to contract with Plaintiff.

Second, Defendant asserts that Plaintiff's two contract theories are mutually inconsistent and are therefore "patently absurd." Reply at 6. Again, this argument was raised and rejected in *Summit*. 2017 WL 4517111, at \*4. At the pleading stage, a plaintiff should be permitted to alternatively plead both an implied contract claim and an express contract claim even though they are inconsistent theories. *Id.* ("Plaintiff contends that at the pleading stage, it should be permitted to alternatively plead both an express contract claim and an implied contract claim even though

they are inconsistent theories. The Court agrees with Plaintiff." (citation omitted)). "Federal Rule of Civil Procedure 8 explicitly allows Plaintiff to plead different theories of relief in the alternative, even if those theories are inconsistent." *Id.*; *see also* Fed. R. Civ. P. 8(d) ("A party may set out 2 or more statements of a claim or defense alternatively or hypothetically. . . . A party may state as many separate claims or defenses as it has, regardless of consistency."). Courts routinely allow plaintiffs to plead both implied contract and express contract theories, as long as those theories are pled in the alternative. *See, e.g.*, *SocialApps, LLC v. Zynga, Inc.*, 2012 WL 381216, at *3 (N.D. Cal. Feb. 6, 2012) ("While the allegations of the implied contract claim rely on the same allegations as the express contract claim, SA is entitled to plead different theories of recovery in the alternative."); *Philips Med. Capital, LLC v. Med. Insights Diagnostics Ctr., Inc.*, 471 F. Supp. 2d 1035, 1047 (N.D. Cal. 2007) ("Although Counter-Claimants may not ultimately prevail on their claim for [implied contract] if, it turns out, there is a valid express contract between the parties, Counter-Claimants may plead in the alternative."); *Doe v. John F Kennedy Univ.*, 2013 WL 4565061, at *8 n.6 (N.D. Cal. Aug. 27, 2013) ("Plaintiff may proceed with alternative claims at the pleading stage, but ultimately [defendant] cannot be held liable for both breach of express contract and breach of implied contract on the same subject matter.").

Accordingly, the Court DENIES Defendant's motion to dismiss Plaintiff's claims for breach of implied contract and breach of express contract. The Court now turns to Plaintiff's claim for quantum meruit.

### B.  Quantum Meruit

"Quantum meruit (or quasi-contract) is an equitable remedy implied by the law under which a plaintiff who has rendered services benefitting the defendant may recover the reasonable value of those services when necessary to prevent unjust enrichment of the defendant." *DPR Constr. v. Shire Regenerative Med., Inc.*, 204 F. Supp. 3d 1118, 1131 (S.D. Cal. 2016) (quoting *In re De Laurentiis Entm't. Grp. Inc.*, 963 F.2d 1269, 1272 (9th Cir. 1992) (citation omitted)). "The elements of quantum meruit are: (1) that the plaintiff performed certain services for the defendant, (2) their reasonable value, (3) that they were rendered at defendant's request, and (4) that they are

unpaid." *Cedars Sinai*, 118 F. Supp. 2d at 1013 (citing *Haggerty v. Warner*, 115 Cal App. 2d 468, 475 (1953)).

Plaintiff's quantum meruit claim relies on the allegation that Defendant "provided assurances" to Plaintiff that D.B., L.M., and M.B. "had eligibility for medical benefits, specifically for an outpatient procedure such as surgery, and that [Defendant] would pay at least 70% of the usual and customary value for any medical procedures or treatment." FAC ¶ 62. Plaintiff contends that these actions constitute "an implied request for services rendered" such that the quantum meruit claim must survive dismissal at the pleading stage. Opp. at 18.

Plaintiff's claim, however, founders on the third element necessary to plead a quantum meruit claim. Numerous decisions have recognized that "[a]n implied request is not sufficient to sustain a cause of action for a quantum meruit when . . . the defendant has not made a specific request for those services." *Gateway Rehab and Wellness Ctr., Inc. v. Aetna Health of Cal., Inc.*, 2013 WL 1518240, at *4 (C.D. Cal. Apr. 10, 2013) (citation omitted); *Cal. Spine & Neurosurgery Inst. v. United Healthcare Servs., Inc.*, 2018 WL 6074567, at *2 (C.D. Cal. June 28, 2018) (dismissing quantum meruit claim without prejudice because Plaintiff "d[id] not bolster its allegations that Defendant expressly requested services"); *Cmty. Hosp. of the Monterey Peninsula v. Aetna Life Ins. Co.*, 119 F. Supp. 3d 1042, 1051-52 (N.D. Cal. 2015) ("Authorizing, by definition, means 'to give legal authority' or 'to formally approve.' In the health insurance context, it is the patient who firsts requests service in the form of treatment. Then, the provider . . . must seek authorization to provide such treatment from the insurer . . . . No reasonable jury could conclude that [provider] 'performed services at [insurer's] request,' when in fact [provider] initiated contact with [insurer] as to authorization." (alterations adopted)); *Barlow Respiratory Hosp. v. Cigna Health & Life Ins. Co.*, 2016 WL 7626446, at *3 (C.D. Cal. Sep. 30, 2016) ("It is undisputed that Defendant did not request that Plaintiff provide [the patient] with medical services. Rather, [the patient] requested medical services from Plaintiff, who then contacted Defendant to verify [the patient's] coverage eligibility. The undisputed facts thus show that Plaintiff cannot establish the third element of its quantum meruit claim." (citations omitted)); *Day*

9

*v. Alta Bates Med. Ctr.*, 98 Cal. App. 4th 243, 249 (2002) ("[W]hen the services are rendered by the plaintiff to a third person, the courts have required that there by a specific request therefor from the defendant . . . .");

Here, Plaintiff alleges that Plaintiff "telephoned" Defendant "to verify . . . medical eligibility benefits" for D.B., L.M., and M.B. and that Defendant "verified"—"either expressly or impliedly"—that Defendant "carried the financial responsibility to pay for . . . anticipated medical care at 70% of the usual and customary value for such care." FAC ¶¶ 17, 27, 38.  Again, this case is on all fours with *Summit*, where the court held that "[e]ven assuming that Defendants verified coverage and authorized Plaintiff to provide . . . services through these alleged representations, Plaintiffs have not alleged enough facts to plausibly suggest that Defendants *requested* Plaintiff to render those services because, as alleged in Plaintiff's complaint, Plaintiff initiated contact with Defendants to verify coverage and seek authorization." 2017 WL 4517111, at *11.  That same conclusion follows here.

Accordingly, the Court GRANTS Defendant's motion to dismiss Plaintiff's quantum meruit claim.  The Court affords Plaintiff leave to amend because Plaintiff may be able to allege sufficient facts to state a quantum meruit claim.  *See Lopez*, 203 F.3d at 1127 (holding that "a district court should grant leave to amend . . . unless it determines that the pleading could not possibly be cured by the allegation of other facts" (internal quotation marks omitted)).

### IV.  CONCLUSION

For the foregoing reasons, the Court GRANTS Defendant's motion to dismiss Plaintiff's quantum meruit claim with leave to amend.  Defendant's motion to dismiss Plaintiff's breach of implied contract and breach of express contract is DENIED.

**IT IS SO ORDERED.**

Dated: September 17, 2019

_____
LUCY H. KOH
United States District Judge